38 F.3d 321
 Marcy JONES and Votis Wilborn, on their own behalf and on
behalf of all similarly situated persons,
Plaintiffs-Appellants,
v.
Ross TAKAKI, Three Unknown Police Officers, Cook County, et
al., Defendants-Appellees.
 No. 93-3540.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 18, 1994.
Decided Oct. 19, 1994.
As Amended Oct. 24, 1994.
Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 9, 1994.
 
 Thomas Peters (argued), David Robert McLenachen, Murphy, Peters & Davis, Chicago, IL, for plaintiffs-appellants.
 Lawrence R. Stasica, Asst. State's Atty., David M. Lavin, Terry L. McDonald, Asst. State's Atty., James J. Jozefowicz (argued), Chicago, IL, for defendants-appellees.
 Before WOOD, Jr., MANION and ROVNER, Circuit Judges.
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 Plaintiffs brought this class action lawsuit under 42 U.S.C. Sec. 1983, asserting that the Illinois drug asset civil forfeiture system, which does not provide for a prompt post-deprivation hearing, violates their rights under the Due Process Clause of the Fourteenth Amendment. The district court refused to certify the class and subsequently granted defendants' motion for summary judgment as to the claims of the named plaintiffs. Plaintiffs now appeal, and we affirm.
 
 I.
 
 2
 The Illinois Drug Asset Forfeiture Procedure Act, 725 ILCS 150/1-14, details the procedure that must follow a drug-related seizure of property. First, the seizing law enforcement agency must notify the State's Attorney of the seizure within 52 days. 725 ILCS 150/5.[1] For seized property valued at $20,000 or less, the State's Attorney has 45 days thereafter to determine whether the property is indeed forfeitable and, if so, to notify the property owner of that fact. 725 ILCS 150/6(A). After the notice issues, the property owner has 45 days to file a claim asserting an interest in the property. 725 ILCS 150/6(C)(1). If he or she does so and deposits the required cost bond, an in rem forfeiture proceeding must be initiated within 45 days. 725 ILCS 150/6(C)(2). A maximum of 187 days may therefore pass before initiation of the forfeiture proceeding.
 
 
 3
 Property belonging to each of the named plaintiffs was seized in connection with an asserted violation of the Illinois drug trafficking laws. In both instances, however, the property owner was not him or herself charged with the crime and for that reason ultimately was entitled to return of the property. Marcy Jones' 1990 Chevrolet Camero was seized by Chicago police officers on September 2, 1992, after her husband Keith Jones had driven the automobile to a motel where he was subsequently arrested, along with his sister Kimberly Jones, in a room containing illegal narcotics. No drugs were found in the automobile, however, and Marcy Jones was not charged with any crime. On October 20, 1992, approximately 50 days after the seizure, the automobile was released.[2] No forfeiture proceeding was ever initiated.
 
 
 4
 Chicago police officers seized Votis Wilborn's 1987 Cadillac on July 31, 1992, after finding narcotics in the car while it was being used by Wilborn's stepson Ulysses McNairy. The Cook County State's Attorney determined that the car was forfeitable on August 7, 1992 and, after four failed attempts between August and October 1992, finally notified Wilborn on November 26 of that year. Wilborn then filed a claim asserting that he was an innocent owner on January 25, 1993, and after several continuances, the matter went to trial on June 14, 1993. The state court found that Wilborn was indeed an innocent owner and ordered that his car be returned.
 
 
 5
 In their federal complaint, Jones and Wilborn claimed to represent all persons "[w]ho have had, or will in the future have, vehicles, money or other property seized by police officers." (R. 1, Count V p 8(a).) They alleged that their Fourteenth Amendment due process rights had been violated because they had not received "a timely post-seizure judicial hearing at which the right of Defendants ... to detain [their] property could be determined" and because "[t]he property was held without a judicial determination of probable cause to seize and detain it." (Id., Count V p 33.) Plaintiffs did not seek damages, but requested both declaratory and injunctive relief.[3]
 
 
 6
 In an April 13, 1993 Memorandum Opinion and Order, 1993 WL 126326, the district court refused to certify the class, finding that Jones' and Wilborn's claims did not meet the typicality requirement of Fed.R.Civ.P. 23(a)(3) in light of the fact-specific balancing test under which the claims would be assessed. The court based its decision on United States v. $8,850, 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143 (1983), in which the Supreme Court had applied the test articulated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[4] to determine whether the delay in initiation of a forfeiture proceeding violated due process. Barker directs courts to consider the "length of delay, the reason for the delay, the defendant's assertion of this right, and prejudice to the defendant." $8,850, 461 U.S. at 564, 103 S.Ct. at 2012; see also Barker, 407 U.S. at 530, 92 S.Ct. at 1708. The district court concluded that by its very terms this fact-specific analysis required case-by-case assessment and that Jones' and Wilborn's claims were therefore not typical in any ways relevant to the Barker analysis.
 
 II.
 
 7
 We agree with the district court that, in light of $8,850 and Barker, Jones' and Wilborn's claims are not "typical of the claims ... of the class," as required by Fed.R.Civ.P. 23(a)(3). Each of the four factors identified in those opinions necessarily differ from case to case, and the overall due process analysis that emerges must therefore be individualized as well. The length of the delay, for example, is obviously different for each claimant. Jones and Wilborn alone illustrate that point, with a difference of nearly 10 months in the length of the delay that each experienced. In addition, as $8,850 explains, "[l]ittle can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case." 461 U.S. at 565, 103 S.Ct. at 2012. The government's reasons for the delay obviously differ in each case, as does the prejudice to the claimant that results from the delay. See, e.g., $8,850, 461 U.S. at 565-69, 103 S.Ct. at 2012-15. Moreover, Barker makes clear that the four factors were only "some of the factors which courts should assess" (407 U.S. at 530, 92 S.Ct. at 2192) and notes that they "must be considered together with such other circumstances as may be relevant" (id. at 533, 92 S.Ct. at 2193). Even the pertinent factors, then, differ from case to case. Thus, as $8,850 explains, the Barker approach is "flexible" and " 'necessarily compels courts to approach ... cases on an ad hoc basis.' " Id. (quoting Barker, 407 U.S. at 530, 92 S.Ct. at 2192).
 
 
 8
 But plaintiffs do not seriously contest the impropriety of class certification in light of this heavily fact-bound analysis. Indeed, they admitted at oral argument that class certification would not be appropriate under the $8,850/ Barker approach. They argue instead that their case poses a question distinct from that addressed in $8,850 and therefore requires analysis under a different framework. Whereas $8,850 focuses on whether the length of delay in initiation of the actual forfeiture proceeding violates the requirements of due process, they reason, their case asks whether, in light of the fact that the forfeiture proceeding will not occur for some time, they are entitled to a preliminary determination of probable cause.[5]
 
 
 9
 We need look no further than the Supreme Court's decision in United States v. Von Neumann, 474 U.S. 242, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986), to dispose of this argument. In that case, the plaintiff complained that a 36-day delay by customs officials in acting on a petition for remission of a seized automobile deprived him of due process.[6] The Court rejected Von Neumann's argument, after reviewing the $8,850/ Barker factors. See id. at 250-51, 106 S.Ct. at 615-16. The Court's reliance on those factors puts to rest the plaintiffs' suggestion in this case that $8,850 applies only to delay in initiation of the forfeiture proceeding itself and does not extend to other types of hearing. As plaintiffs do here, Von Neumann argued that due process entitled him to an additional, preliminary hearing, and the Court found that $8,850 provided the appropriate vehicle for assessing his claim.
 
 
 10
 Even more significantly, the Court made clear that the Constitution does not require any procedure prior to the actual forfeiture proceeding. The Court explained:
 
 
 11
 We understand respondent to argue that his property interest in his car gives him a constitutional right to a speedy disposition of his remission petition without awaiting a forfeiture proceeding. We disagree. Implicit in this Court's discussion of timeliness in $8,850 was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect Von Neumann's property interest in his car.
 
 
 12
 Id. at 249, 106 S.Ct. at 614. Thus, despite plaintiffs' attempt to otherwise characterize their grievance, the only possible basis for their claim is that the delay in initiation of the forfeiture proceeding itself was unconstitutionally lengthy, as that is the only hearing to which they are constitutionally entitled. $8,850 therefore provides the only vehicle through which they might have been able to state a viable claim. As the district court found and the plaintiffs have conceded, their claims do not typify those of the purported class members in terms of the questions that are relevant to the $8,850 analysis. The district court's refusal to certify their class was clearly proper.
 
 III.
 
 13
 Jones and Wilborn conceded before the district court, as they do on appeal, that if the $8,850/ Barker analysis were applied, their individual claims would fail and summary judgment would properly be granted to the defendants on those claims. (See Sept. 20, 1993 Judgment Order, R. 60, 832 F.Supp. 1224.) Having determined that, in light of Von Neumann, $8,850 provides the only framework through which plaintiffs might have been able to establish a due process violation, our review of defendants' summary judgment motion is therefore complete.[7]
 
 IV.
 
 14
 The district court was correct that $8,850 provides the only framework through which plaintiffs might have been able to establish a due process violation, and that under that framework Jones' and Wilborn's claims did not typify those of the purported class members. No other issues are before us, as plaintiffs have conceded that defendants' summary judgment motion was properly granted under the $8,850 analysis. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Secretary of State must also be notified if the seized property is a vehicle. Id
 
 
 [2]
 Jones did not actually retrieve her car until early November 1992 because she could not afford the $350 towing and storage fees that were due before the police would release the vehicle. That additional time is irrelevant, however, because this suit challenges only the lack of a prompt post-seizure hearing
 
 
 [3]
 The Complaint also asserted various constitutional violations by the police officers who arrested Keith and Kimberly Jones. The district judge dismissed those counts without prejudice, finding that under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), he should abstain from entertaining them during the pendency of the state criminal proceedings. See February 17, 1993 Mem.Op. at 4-6, 1993 WL 41420
 
 
 [4]
 Barker addressed the criminal defendant's speedy trial right
 
 
 [5]
 Notably, the hearing that plaintiffs request looks nothing like a typically simple probable cause hearing, but more closely resembles the full-blown forfeiture proceeding. For example, the complaint asserts that:
 At this prompt post-seizure hearing Plaintiff was entitled to notice, the opportunity to be present with counsel, the opportunity to present evidence and cross-examine adverse witnesses, the right to know what evidence was considered by the judge in making the finding of probable cause, and the reasons for any adverse determination.
 
 
 [6]
 After the seizure of property by the United States Customs Service, a claimant has two options. She can either wait for the government to initiate a judicial forfeiture action, or she can attempt to expedite the matter via administrative channels by filing a remission petition with the Secretary of the Treasury. See Von Neumann, 474 U.S. at 244, 106 S.Ct. at 612
 
 
 [7]
 The parties requested and the district court agreed to address standing as an alternative ground for granting summary judgment in favor of the defendants. Although they have briefed that issue on appeal as well, we have no need to reach it in light of our holding regarding $8,850